Robert L. MILLER, Sr., Appellant–Plaintiff,

v.

ST. JOSEPH COUNTY AREA BOARD OF ZONING APPEALS, Michael Garatoni and Growing Kids, LLC, Appellees–Defendants.

No. 71A04–0309–CV–450.

Court of Appeals of Indiana.

May 24, 2004.

R. William Jonas, Jr., Hammerschmidt, Amaral & Jonas, South Bend, IN, Attorney for Appellant.

Larry L. Ambler, South Bend, IN, Attorney for Appellee St. Joseph County Board of Zoning Appeals.

Charles M. Loeser, South Bend, IN, Attorney for Appellees Michael A. Garatoni and Growing Kids, LLC.

## OPINION

SULLIVAN, Judge.

While the adage "good fences make good neighbors" is routinely heard in disputes between adjoining property owners, the phrase "good trees make good neighbors" better describes the facts in this case. Robert L. Miller, Sr. ("Miller") appeals from the trial court's dismissal of his petition to review the decision of the St. Joseph County Area Board of Zoning Appeals ("the Board") which granted a variance to Michael Garatoni ("Garatoni") to build an addition to the child care center which he owned. We restate the issues which Miller has presented for our review as whether the trial court erred in dismissing his petition for review because Miller filed it outside of the required time period.

We affirm.

Garatoni owns Growing Kids, a child care center which has enrollment at nearly one-hundred percent of its licensed capacity of 192 students. In order to meet demand, Garatoni determined that he needed to build an addition to his building. In order to most feasibly construct an addition, he sought a variance so that he could build in the setback area of his property which adjoins the residential lot owned by Miller. Garatoni negotiated with Miller about what requirements would have to be met so that Miller would not oppose Garatoni in seeking the variance. At a Board meeting on December 4, 2002, Garatoni informed the Board of the conditions upon which he and Miller had agreed and asked that the Board resolve two issues which they could not settle. They informed the Board that Garatoni had agreed to install speed bumps and

signs along the access road to the property. Garatoni agreed that he was going to maintain the buffer which existed between the properties as a sixteen-foot buffer rather than as the twenty to twenty-four-foot buffer which existed and that he would plant some additional trees to act as a sound barrier. He then requested that the Board determine the number of trees to be planted, in the range of thirteen to thirty-five as set by the parties, and to determine what uses could be made of an area which contained a retention pond along the area adjoining Miller's property. Following discussion about what conditions should be placed upon the granting of a variance, the Board passed a motion granting the variance. The written order, issued on December 4, stated that the conditions of the variance include that Garatoni "maintain [a] 16' buffer, add an additional 27 trees and no permanent fixtures in retention area E." Appellant's Appendix at 75. The order also stated that any conditions stated in the Minutes were to be incorporated into the decision of the Board.

Miller filed a motion to correct error with the Board, noting several errors in the omission of conditions and in the description of the conditions. Garatoni also filed a letter with the Board pointing out an additional error not raised by Miller. The Board subsequently held a second hearing on the matter and revised the order to reflect what was actually approved at the December 4 hearing. The revised order, issued following the February 5 hearing, stated that Garatoni "[m]ust maintain a 16' buffer consisting of live vegetation with an additional 27 trees which will run a minimum of approximately 275' from the north property line to the south end of the new play area and no permanent fixtures or structures placed in retention area B." Id. at 55.

Following the issuance of the revised order granting the variance, Miller filed a motion for review with the St. Joseph Superior Court. In his motion, he asserted that the revised order entered by the Board was a substantive change from the initial order and asked that both the first and second orders be set aside and that the matter be remanded to the Board for further proceedings. He also claimed that Garatoni was bound by promises made both at the time he sought the variance and from 1994 when he sought rezoning of his property so that he could build the child care center. Finally, he asserted that the Board was without the power and authority to have adopted a 1977 interpretation of the zoning ordinance.

The trial court concluded that the second order issued by the Board was to correct clerical errors in the first order. Relying upon Indiana Code § 36–7–4–1003 (Burns Code Ed. Repl.1995), the trial court held that the motion for review of the Board's decision was filed late and that the action should be dismissed.

Indiana Code § 36–7–4–1003 authorizes a party aggrieved by a decision of the board of zoning appeals to file a verified petition with a court in the county where the affected premises are located alleging that the decision is illegal. It further provides that the petition must be filed with the court within thirty days after the date of the decision of the board of zoning appeals. Id.

In seeking review of the decision of the Board, Miller filed his petition on March 7, 2003. The original decision of the Board granting the variance with conditions was made on December 4, 2002. The revised order of the Board granting the variance was made at the February 5, 2003 hearing. Because Miller did not file his challenge of the original order of the Board with the court within thirty days as

required, his challenges to the first order cannot be considered. *See Biggs v. Bd. of Zoning Appeals of City of Wabash,* 448 N.E.2d 693, 694 (Ind.Ct.App.1983) (failure to comply with the statute is fatal), *trans. denied.*

 It is with this knowledge that Miller has argued that the second order issued by the Board made substantive changes to the first order. As a result, he asserts that the trial court may review his petition because his challenge was brought within the required time frame. While we acknowledge that the addition of some language in the second order appears to make substantive changes to the first order and thus was not correction of clerical errors,[1] the majority of Miller's claims are not reviewable because any changes made to the second order did not address the issues which Miller now presents. Specifically, Miller's claims that the Board improperly adopted its 1977 interpretative rule relating to child care centers and that Garatoni was bound by the conditions he agreed to in 1994 when the property was rezoned are barred. The second order of the Board did not change the fact that the variance had been granted and that the conditions which the Board authorized were different from those of the 1994 rezoning. Had Miller wished to challenge the ability of the Board to grant the variance in this case, he necessarily must have

filed his petition for review within thirty days of the first order. Nonetheless, it is not so clear that his claim that the Board improperly changed the length of the buffer strip is barred. However, given the position taken by Garatoni upon appeal, we need not decide whether Miller's claim may proceed upon that ground.

In his appellee's brief, Garatoni has conceded that the second order did not change the requirement that he maintain a sixteen-foot buffer along the entire western property line. Specifically, he states in his brief:

"Most of Miller's argument as to Count I of the Complaint ... is an elaboration of the point that 'maintaining the 16–foot buffer on the western portion of Garatoni's property['] was understood to be a different matter from adding more trees. But no one disputes that.... As he describes it, the Corrective Order deprived him of a benefit that the First Order had provided, i.e., the condition that the Variance would require maintenance of a 'buffer' not just on the north side of the west edge of the Garatoni property (the north side is what is closest to Miller's house, and therefore what presumably matters the most ...), but all the way down the west edge to the southwest tip of the property. But Miller offers no basis for demonstrating that the Corrective Order results in any

---

1. The parties agree that although there is no specific authority for a zoning board to make corrections of clerical errors in its order, such is necessary and proper. We agree that a zoning board must be able to make corrections to clerical errors in its orders. While we have found no statute which directly authorizes zoning boards to amend orders to correct clerical errors, we note that our courts have applied general administrative law principles outside the context of an agency action governed by the Administrative Orders and Procedures Act ("AOPA"). *See City of Jasper v. Collignon,* 789 N.E.2d 80, 87

(Ind.Ct.App.2003), *trans. denied.* Most directly on point, in *Equicor Dev., Inc. v. Westfield–Washington Township Plan Comm'n,* 758 N.E.2d 34 (Ind.2001), our Supreme Court applied the provisions of the AOPA in reviewing a decision made by a local zoning commission. Indiana Code § 4–21.5–3–31 (Burns Code Ed. Repl.1996), authorizes an agency to correct clerical mistakes or other errors resulting from oversight or omission in a final order. Thus, to the extent that the Board was correcting mistakes in its first final order, it had authority to do so.

such deprivation; he simply asserts it." Appellee's Brief at 12.

Furthermore, in Garatoni's attempt to explain a perceived inconsistency of Miller's argument, he indicates that the only reading of the condition of the variance is that the buffer be maintained along the entire western property line rather than just along the area where the new trees will be planted. In explaining his reasoning he states:

"The meaningful so-called difference between the First Order and the Corrective Order which is relevant to Miller's argument is really no difference at all: in order to conclude that the Corrective Order deprives Miller of a benefit that the First Order granted, it is necessary to interpret the phrase 'will run a minimum of approximately 275′ from the north property line' in the Corrective Order as applying not only to the immediately preceding words, describing where the additional trees are to be planted, but to the beginning of the statement, i.e., the requirement of the 16–foot buffer. That is a strained reading of the Board's words, to say the least. If one says 'A with B which will be C,' does the 'C' apply to the 'A' as well as the 'B'? That would be an odd way to speak. Miller's argument is inconsistent with normal speech. It is inconsistent with what the Board asserts was its meaning. It is seemingly inexplicable. Why would Miller claim that the Corrective Order eliminates a requirement that the Board says *(and Garatoni acknowledges)* has not been taken away?

\* \* \*

From the transcripts of the December 4, 2002 and February 5, 2003 proceedings before the Board, it is clear that while there was discussion of eliminating the buffer requirement on the south end of the Garatoni property, the Corrective Order does nothing more than correct clerical errors in the First Order. *The Board did not mean to limit the buffer requirement to the northernmost 275 feet." Id.* at 13–14 (emphasis supplied).

Given his concession that the Board did not mean to limit the sixteen-foot buffer to the length of the area in which the trees were to be planted, but that it was to extend for the entire length of the western property line, Garatoni is judicially estopped from asserting a contrary position in any future legal proceeding. *See Clark v. Crowe,* 778 N.E.2d 835, 841 (Ind. App.2002) (explaining that judicial estoppel focuses on the relationship between a litigant and the judicial system and its purpose is to protect the integrity of the judicial process rather than to protect litigants from allegedly improper conduct by their adversaries). While we recognize that Garatoni has not made a representation before a court that he is not required to maintain the buffer along the entire property line, thus making our reference to judicial estoppel somewhat prospective, Miller's concern is that Garatoni not be able to use the order from the Board to remove the buffer. Miller is now protected from such an occurrence.

The judgment of the trial court dismissing the petition for review is affirmed.

ROBB, J., and HOFFMAN, Sr.J., concur.